EVERETT PIANO CO. v. GOEPEL.

(Circuit Court, S. D. New York. July 7, 1898.)

PATENTS—CONSTRUCTION OF CLAIM—INFRINGEMENT—PIANOS.

The French and Nalence patent, No. 515,426, for a piano attachment, whereby a nonresonant flexible strip, carrying a metallic striker, is interposed between the hammer and the string, so that the hammer strikes the strip on one side of the striker, for the purpose of modifying the tone to resemble that of a guitar, mandolin, zither, etc., by means of a secondary or double stroke on the string, *held* not anticipated, valid, and infringed.

This cause comes here on final hearing upon pleadings and proofs. The suit is brought for infringement by defendant of the three claims of letters patent No. 515,426, granted February 27, 1894, to French and Nalence, for improvements in piano attachments.

Charles E. Pickard and M. B. Philipp, for complainant.

W. C. Hauff, for defendant.

LACOMBE, Circuit Judge. The specification thus describes the invention:

"Our invention relates to piano attachments for changing the tone of a piano, causing it to resemble a guitar, mandolin, zither, etc. To this end we arrange on the piano a series of strips of flexible material, each having on it a metallic striker. These strips are connected to a bar operated by a pedal, by which they can be moved so that the ordinary hammer of the piano will strike the flexible strip. The strip thus kills the tone which would otherwise be produced by the string, but the metallic striker on the strip striking the string produces the modified tone which we desire. A reverse movement of the pedal withdraws the strips, leaving the hammers free to strike the strings in the ordinary manner, and produce the ordinary tone of the piano."

Then follows a description of the drawings and of the mode of operation of the parts, in which it is stated that:

"The hammers strike the material of the strips above the striker [i. e. between the striker and the point of attachment of the strip], and press it against the strings. The soft strip kills the effect of the blow of the hammer on the string, but the hard striker is thrown against the string and produces a tone. By the use of a metallic striker, we secure a characteristic tone produced by the metal striking the metal strings."

The claims are:

"(1) In a piano, in combination with the strings, a series of nonresonant, soft, flexible strips having hard strikers or buttons on that face next to the strings, and hammers to act upon the strips to one side of the said buttons. (2) In a piano, the combination with the strings of a series of nonresonant,

soft, flexible strips having hard metallic buttons or strikers on that face next to the strings, and hammers to act upon the strips on one side of the said buttons. (3) In a piano, the combination with the strings of a series of flexible strips having on that face next the strings hard buttons or contacts, and a series of hammers adapted to strike the strips to one side of the said buttons."

While the application was pending in the patent office, and in order to avoid references cited by the examiner, the words, "nonresonant, soft," were inserted as qualifications of the "flexible strips" in the first two claims; and in the same claims there were also added the words, "to one side of the said buttons," as a qualification of the striking action of the hammers. The third claim was also inserted pending application, and it was conceded upon the argument, by complainant's counsel, that, if this third claim is to be sustained against prior patents, the words, "nonresonant, soft," must be implied from the description as qualifying the flexible strips. As thus construed, it is substantially identical with the first claim, and may be disregarded as superfluous. The second claim differs from the first, in that it calls for a "striker" which is not only "hard," but also "metallic."

This patent was before the circuit court for the Northern district of Illinois in Piano Co. v. Bent, 79 Fed. 79, and its patentability sustained. Referring to the devices of the prior art, which were in evidence in that case, Judge Showalter says:

"In each instance the interposed medium for modifying the vibration of the string, and so changing the tone, is directly between the hammer and the string. In the case of the patent in suit, what is called the 'metallic button' in one place in the specification, and the 'hard button' in another and in the claims, is not interposed so that the stroke of the hammer is directly against such button. The idea of modifying the tone by a secondary or double stroke on the string, in the manner described in the patent in suit, is not found in the prior art. The novelty of this construction is rather emphasized than otherwise by the prior devices. In the structure complained of, the leather tongue, at its lower extremity, is tightly folded and secured around a small metallic cylinder placed transversely. The stroke of the hammer is against the tongue and above this leather-covered cylinder. The mode of operation and effect are substantially the same as in the patent in suit."

Inasmuch as in Bent's striker the metallic cylinder was surrounded by the leather of the tongue, the court did not find infringement of the second claim, which is confined to a "metallic" striker. In the suit at bar the metallic cylinder is attached at the end of the tongue, and uncovered. This structure, which is in all other respects similar to Bent's, is within the first and second claims. The only question presented here is whether an English patent, which was not before the court in the Illinois case, is such an anticipation as to induce a different conclusion from that reached by Judge Showalter.

This English patent is No. 19,237 of 1890 (accepted October 24, 1891), to William H. D. Downe. It covers a rail to which are attached a series of depending tongues, which, by lateral movements of the rail, are interposed between the hammers and the strings or withdrawn therefrom. These depending tongues are—

"Fine springs bent in angular form, and placed exactly over the space between each hammer. The springs are secured to the bottom side of the rail with a screw and washer, and are continued to within ⅛ in. of the pianoforte strings. They are then bent down so as to fall about 1 in. below the

face of the hammer when it is near the string, the ends of the springs which are bent for striking purposes standing away from the strings 1¼ in. When the rail is at rest, the hammers pass freely through the springs, producing the ordinary tone. When the rail is moved to the right, the springs are brought immediately before the hammers, and, receiving the full force of the blow, the ends of the springs are sent quickly to the strings, and produce a tone resembling the zither. When the rail is released, a spiral spring, attached to the left end, causes it to fall back into its former position. To suit the requirements of the pianoforte, the rail may be placed below the hammers instead of above, and the springs may be bent to any shape or form, up or down, so long as the principle remains,—that, when a key is struck, the springs receiving a blow are sent into swift contact with the pianoforte strings."

This patent does undoubtedly disclose the "secondary or double stroke" referred to in Judge Showalter's opinion as a characteristic of complainant's patent. The tongues, however, being metal springs, apparently are not adapted to discharge the other function of the "nonresonant, soft," flexible strip, which, as the specification points out, "kills the tone which would otherwise be produced by the string," or, as it is elsewhere said, "kills the effect of the blow of the hammer on the string." The patent is an extremely narrow one, and must be confined to a combination which will include the flipped-out hard striker and the soft nonresonant deadening strip, both of which seem to be necessary to a successful result, and, in combination, novel. Inasmuch as the defendant's device infringes this combination as covered by first and second claims, complainant is entitled to the usual decree.